UNITED STATES BANKRUPTCY COURT          FOR PUBLICATION

SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

In re:

JUAN SANCHEZ,

                Debtor.

Chapter 7

Case No. 06 B 22018 (ASH)

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

ASTRID CORRALES, agent for
ALLEGHENY CASUALTY CO.,

                Plaintiff,

    -against-

JUAN SANCHEZ,

                Defendant.

Adv. Proc. No. 06-8281A

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

**A P P E A R A N C E S :**

**Juan Sanchez**
*Pro se*
**85 Columbus Avenue, Apartment 2-E**
**Pleasantville, NY 10570**

**KEITH, SHAPIRO & FORD**
**Attorneys for Astrid Corrales,**
   **Agent for Allegheny Casualty Co.**
**By:  Richard A. Benson, Esq.**
**666 Old Country Road, Suite 509**
**Garden City, NY 11530**

**ADLAI S. HARDIN, JR.,**
**UNITED STATES BANKRUPTCY JUDGE**

**DECISION AND ORDER**

        Plaintiff commenced this Adversary Proceeding against the debtor-defendant Juan

Sanchez seeking a determination that plaintiff's contractual indemnity claim against the debtor is non-

dischargeable under Section 523(a)(7) of the Bankruptcy Code, 11 U.S.C. § 523(a)(7), on the theory that

plaintiff, a private bail bondsman which paid a forfeited bail bond to the State of New York, should be

deemed subrogated to the forfeiture right of the State of New York.

Because there appears to be no dispute as to the material facts, the Court decides the controversy as a matter of law without a trial. I conclude (1) that plaintiff's claim against the debtor is purely contractual and therefore dischargeable, and that the doctrine of subrogation has no application here, and (2) that even if the debtor's liability to plaintiff were based on equitable subrogation, rather than contract, the three factual predicates of Section 523(a)(7) are not present.

## Jurisdiction

This Bankruptcy Court has jurisdiction of this Adversary Proceeding pursuant to 28 U.S.C. §§ 1334(a) and 157(a) and the standing order of referral to Bankruptcy Judges signed by Acting Chief Judge Robert J. Ward on July 10, 1984. This is a core proceeding with respect to the dischargeability of claims against the debtor under 28 U.S.C. § 157(b)(2)(I).

## Background

Plaintiff is a corporation authorized to do business in the State of New York and operate as a licensed bonding company. Plaintiff issued a bail bond in the amount of $100,000 to effect the release on bail of a criminal defendant named Esteban Chavez and secure the appearance of Chavez in court on scheduled dates. Debtor and Carolina Garcia ("Garcia"), each of whom had a social if not familial relationship with Chavez,[1] jointly and severally executed an Agreement of Indemnity with the plaintiff under which they agreed to indemnify plaintiff if plaintiff were required to pay on the bail bond. Sanchez did not execute and had no liability on the bail bond.

Chavez apparently absconded and did not appear in court as required. Accordingly, the bail bond was forfeited and plaintiff became obligated to pay and paid $100,000 to the State of New York. Debtor and Garcia became liable to plaintiff for $100,000 pursuant to the Agreement of Indemnity.

In September 2005, Garcia paid over to plaintiff the sum of $32,000, reducing the amount due plaintiff to $68,000. No further payments were received from either Sanchez or Garcia. Sanchez

---

[1] Sanchez' relationship to Chavez, or lack of it, is irrelevant.

- 2 -

filed a bankruptcy petition on January 20, 2006, seeking discharge, amongst other debts, of his indemnity obligation to plaintiff.

## **Discussion**

The law which governs the outcome of this dispute is Section 523(a)(7) of the Bankruptcy Code.

The "starting point of any statutory analysis is the language of the statute itself." *City of Philadelphia v. Gi Nam (In re Gi Nam)*, 273 F.3d 281, 286 (3d Cir. 2001); *Commonwealth of Pa. Dep't of Environmental Resources v. Tri-State Clinical Laboratories, Inc.*, 178 F.3d 685, 688 (3d Cir. 1999), *cert. denied sub nom. Pa. Dep't of Environmental Protection v. Nigro*, 528 U.S. 1075 (2000); *Pa. Dep't of Public Welfare v. Davenport*, 495 U.S. 552, 557-58 (1990); *Kelly v. Robinson*, 479 U.S. 36, 43 (1986). To quote from *In re Delta Air Lines,* 341 B.R. 439, 445 (Bankr. S.D.N.Y. 2006):

> Statutes are to be construed and applied in accordance with the plain meaning of the words used by Congress. It is not for the court to ignore what the statute actually says, or to employ strained or imaginative interpretations not consistent with the plain and ordinary usage and meaning of the statutory language. The intent of Congress must be presumed to comport with the plain and ordinary meaning of the words in the statute as Congress wrote it, and it is not for the court to substitute its judgment in the guise of divining Congressional intent through creative "construction." *Hartford Underwriters Ins. Co. v. Union Planters Bank*, 530 U.S. 1, 10, 120 S.Ct. 1942, 1949, 147 L.Ed.2d 1 (2000) (when resolving questions of statutory interpretation, "we begin with the understanding that Congress says in a statute what it means and means in a statute what it says"); *Park 'N Fly, Inc. v. Dollar Park & Fly, Inc.*, 469 U.S. 189, 194, 105 S.Ct. 658, 661, 83 L.Ed.2d 582 (1985) ("Statutory construction must begin with the language employed by Congress and the assumption that the ordinary meaning of that language accurately expresses the legislative purpose."); *Lee v. Bankers Trust Co.*, 166 F.3d 540, 543 (2d Cir. 1999) ("It is axiomatic that the plain meaning of a statute controls its interpretation, and that judicial review must end at the statute's unambiguous terms."). Second Circuit Chief Judge John Walker, in an illuminating law review article, quotes the words of Lord Atkinson in stating "[i]f the language of a statute be plain, admitting of only one meaning, the Legislature must be taken to have meant and intended what it has plainly expressed, and whatever it has in clear terms enacted must be enforced. . . ." John M. Walker, *Judicial Tendencies in Statutory Construction: Differing Views on the Role of the Judge*, 58 N.Y.U. ANN. SURV. AM. L. 203, 205-206 (2001).

Since we are dealing here with the dischargeability of a debt, there is another general principle of statutory interpretation applicable in bankruptcy law which must be considered. The courts have repeatedly stressed that the Section 523(a) exceptions to discharge must be strictly construed to

comport with the "fresh start" philosophy underlying the Bankruptcy Code. *Household Finance Corp. v. Danns* (*In re Danns*), 558 F.2d 114, 116 (2d Cir. 1977) (interpreting Section 17(a), the predecessor of Section 523) ("[E]xceptions to discharge are to be narrowly construed. . . ." (citations omitted)); *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Bonnanzio (In re Bonnanzio)*, 91 F.3d 296, 300 (2d Cir. 1996); *Shearson Lehman Hutton, Inc. v. Schulman* (*In re Schulman*), 196 B.R. 688, 693 (Bankr. S.D.N.Y. 1996); *Kuper v. Spar* (*In re Spar*), 176 B.R. 321, 326 (Bankr. S.D.N.Y. 1994) ("To meet the goals intended under the Code, exceptions to discharge must be strictly and literally construed against the creditor and liberally construed in favor of the honest debtor" (citations omitted)); *Hudson Valley Water Resources, Inc. v. Boice (In re Boice)*, 149 B.R. 40, 43 (Bankr. S.D.N.Y. 1992) ("Exceptions to dischargeability are construed strictly against the creditor and liberally in favor of the debtor to accomplish bankruptcy's 'fresh start' goal" (citations omitted)). In accord *Denton v. Hyman* (*In re Hyman*), 320 B.R. 493, 502 (Bankr. S.D.N.Y. 2005), *aff'd*, 335 B.R. 32 (S.D.N.Y. 2005) and *Zohlman v. Zoldan (In re Zoldan)*, 221 B.R. 79, 83 (Bankr. S.D.N.Y. 1998), *aff'd*, 226 B.R. 767 (S.D.N.Y. 1998).

Section 523(a)(7) provides as follows:

(a) A discharge under section 727 . . . of this title does not discharge an individual debtor from the debt — . . . .

(7) to the extent such debt is for a fine, penalty, or forfeiture payable to and for the benefit of a governmental unit, and is not compensation for actual pecuniary loss, other than a tax penalty.

Section 523(a)(7) sets three requirements for non-dischargeability: (i) the debt must be "for a fine, penalty or forfeiture;" (ii) it must be "payable to and for the benefit of a governmental unit;" and (iii) it must not be "compensation for actual pecuniary loss." *See, Empire Bonding Agency v. Lopes (In re Lopes),* 339 B.R. 82, 86 (Bankr. S.D.N.Y 2006) ("For a debt to be non-dischargeable pursuant to § 523(a)(7), three requirements must be satisfied: the debt must be (1) for a fine, penalty or forfeiture, and it must also be (2) payable **to and for** the benefit of a governmental unit, but (3) may not be compensation for actual pecuniary loss.") (emphasis in original).

Sanchez' debt to plaintiff does not meet any of the three statutory requirements. (1) The debt is not a "fine," nor is it a "penalty," nor is it a "forfeiture" under any normal and customary definition of those words. It is a simple contract obligation based upon the Agreement of Indemnity which Sanchez signed. (2) The debt is not "payable to or for the benefit of a governmental unit." It is payable to plaintiff, a privately-owned, for-profit business corporation. (3) The debt is precisely the sort of "compensation for actual pecuniary loss" which the statute says it may not be, to wit, compensation for the actual pecuniary loss sustained by plaintiff when it paid $100,000 to the State of New York. Thus, on the face of the statute as it is unambiguously written, plaintiff's claim in this Adversary Proceeding must be dismissed.

The same issue presented here was decided in *In re Lopes*. The Court there was asked to determine whether plaintiff, a private professional bail bond surety, was entitled to a determination of non-dischargeability under Section 523(a)(7) against a debtor-defendant who agreed to indemnify the bail-bonding agency if her husband did not appear in court on his appointed trial date. The Court stated that there was no reason that a private bail-bonding agency should receive any special protection from a bankruptcy discharge and held that the debt that arose from the indemnity agreement did not fall within the ambit of Section 523(a)(7). The debtor in *In re Lopes* was not the criminal defendant who absconded, and plaintiff was not the government agency to whom the forfeiture was paid. The Court in *In re Lopes* recognized that "[t]he indemnity agreement between Debtor and Plaintiff was separate from Plaintiff's obligation to make payment to New York County." The *Lopes* debtor's liability to the bonding company-plaintiff was not penal in nature, but was compensation for a pecuniary loss pursuant to a contractual relationship between debtor and the plaintiff. Thus, the Court in *In re Lopes* held that the plaintiff was not entitled to a determination that the debtor's obligation was non-dischargeable pursuant to Section 523(a)(7). To the same effect, *see Pioneer General Insurance Company v. Paige* (*In re Paige*), 1988 W.L. 62500 (Bankr. D. Colo. 1988); *County of Berks v. Damore* (*In re Damore*), 195 B.R. 40 (Bankr. E.D. Pa. 1996).

Plaintiff's reliance on *City of Philadelphia v. Gi Nam (In re Gi Nam)*, 273 F.3d 281 (3d Cir. 2001) is misplaced. Unlike the instant case, the debt in *In re Gi Nam* satisfied all three requirements necessary to be non-dischargeable under Section 523(a)(7). The debt was a forfeiture of a bail bond. The debtor was personally liable on the bail bond. When the criminal defendant (the debtor's son) fled to Korea and failed to appear in court, judgment was entered against the debtor for the forfeited bail bond. The debt was payable to and for the benefit of a governmental unit, the City of Philadelphia, and it was not compensation for an actual pecuniary loss. Therefore, the Third Circuit held that the forfeited bail bond was excepted from discharge under Section 523(a)(7).

Lacking any colorable basis for its claim of non-dischargeability under Section 523(a)(7), plaintiff invokes the equitable doctrine of subrogation to argue that "The Plaintiff would stand in the shoes of the State of New York on her [2] forfeiture claim, and her right to proceed to collect against the surety Mr. Sanchez would be preserved, despite Mr. Sanchez' filing under Chapter 7, since the debt would not be dischargeable, owing to it being a forfeiture, under 11 U.S.C. § 523(B)[*sic*](7)." Plaintiff's Supplemental Trial Memorandum unnumbered page 4. The argument fails for two separate and independently-sufficient reasons.

**First**, plaintiff's claim against the debtor is solely contractual based on the Agreement of Indemnity. The equitable doctrine of subrogation has no application here. To understand this it will be useful to discriminate between several legal terms of art and then to examine briefly the equitable doctrine of subordination.

An "indemnitor" [3] is one who agrees by contract to indemnify or hold harmless the indemnitee from a liability, loss or obligation which the indemnitee may incur to an obligee on some basis

---

2   By use of the pronoun "her," plaintiff apparently seeks to personalize itself as Astrid Corrales. But Ms. Corrales sues merely as agent for the corporate plaintiff, which is the real party in interest.

3   Defined in BLACK'S LAW DICTIONARY 769 (6th ed. 1990) as follows: "The person who is bound, by an indemnity contract, to indemnify or protect the other."

(contract, tort or other ground for liability) independent of the indemnity itself. A "guarantor" [4] is one who is required by contract to pay to an obligee the obligation owed by the primary obligor to the obligee in the event that the primary obligor defaults. The term "surety" [5] is generally used to refer to one or more parties each of whom is liable to the obligee on a bail bond or other bond or undertaking. Two or more sureties may or may not have rights of indemnification or subrogation as between themselves; but each surety is primarily, jointly and severally liable to the obligee. Laymen, lawyers and even courts sometimes incorrectly use these three terms interchangeably,[6] but the result can only be confusion.

The doctrine of equitable subordination is aptly summarized in 23 New York Jurisprudence, Second Edition (2006), *Contribution, Indemnity and Subrogation* § 114 as follows:

> § 114 "Legal" subrogation based on equitable principles
>
> "Legal" subrogation, which is so designated because it arises by operation of law rather than by virtue of any express contractual or statutory provision, does not depend upon privity or contract, express or implied, and is not limited to sureties or quasi-sureties, but is founded on the facts and circumstances of each particular case and the principles of natural justice. It is a doctrine taken from the civil law, based on equitable principles, and designed to further justice and to prevent unjust enrichment.
>
> Pursuant to the doctrine of equitable subrogation, where property of one person is used to discharge an obligation owed by another or a lien upon the property of another, under such circumstances that the other would be unjustly enriched by the retention of the benefit thus conferred, the former is entitled to be subrogated to the position of the obligee or lienholder. The doctrine of subrogation applies where it is equitable that a person furnishing money to pay a debt should be substituted for the creditor, or in place of the creditor, and it must be administered in such a manner as to accomplish what is just

---

[4] Defined in BLACK'S LAW DICTIONARY 705 (6th ed. 1990) as follows: "Person who becomes secondarily liable for another's debt or performance in contrast to a strict surety who is primarily liable with the principal debtor. One who promises to answer for a debt, default or miscarriage of another."

[5] Defined in BLACK'S LAW DICTIONARY 1441 (6th ed. 1990) as follows: "One bound with his principal for the payment of a sum of money or for the performance of some duty or promise and who is entitled to be indemnified by some one who ought to have paid or performed if payment or performance be enforced against him."

[6] For example, plaintiff refers to "the surety Mr. Sanchez" (Supplemental Trial Memorandum unnumbered page 4) and states that "Mr. Sanchez and Ms. Garcia jointly and severally signed as sureties for Mr. Chavez" (Trial Memorandum unnumbered page 5), despite the fact that plaintiff acknowledged in response to the Court's post-hearing letter of inquiry that the debtor and Garcia did not sign and were not parties to the bail bond as "surety" or otherwise, and that the debtor had no liability to the State of New York in respect of the bail bond.

and fair between the parties.   It has been adopted to compel the ultimate discharge of an
obligation by the person who in justice, equity, and good conscience ought to pay it.
[footnotes omitted]

As is clear from this analysis in New York Jurisprudence, there is one key element of subrogation which is missing here.  Subrogation is where party "A" is subrogated to the rights of a creditor of party "B" whose claim against B has been paid by A.  The key element is that the party which A paid had a claim against B.  If the party A paid did not have a claim against B, there is nothing to subrogate.  This is recognized by plaintiff in its argument that "The principle of legal (i.e., equitable subordination) is recognized under bankruptcy, as well as non-bankruptcy, law, its principal application being in the realm of claims by co-debtors who have paid the co-obligees and thereafter seek to stand in the shoes of the satisfied creditor."  Supplemental Trial Memorandum at unnumbered page 2.  The principle is codified in Section 509(a) of the Bankruptcy Code, which provides (emphasis supplied):

> (a) Except as provided in subsection (b) or (c) of this section, an entity that is liable with the debtor on, or that has secured, *a claim of a creditor against the debtor*, and that pays such claim, is subrogated to the rights of such creditor to the extent of such payment.

In this case, the debtor did not sign as surety on the bail bond and was not obligated to the State of New York in any respect.  Plaintiff cannot be subrogated to the rights of the State of New York against the debtor because the State of New York had no rights on the bail bond or otherwise against the debtor.  Of course, plaintiff itself does have a claim against the debtor, but its claim is purely contractual based on the Agreement of Indemnity.

The doctrine of subrogation has no application here.

**Second**, even assuming *arguendo* that plaintiff had a valid claim of liability against the debtor based upon subrogation, rather than indemnification, that would not change the basic facts here which disqualify this plaintiff from relief under Section 523(a)(7).  Whether plaintiff's claim to recover $100,000 (or $68,000 net of the Garcia payment) is based upon contractual right of indemnity or equitable subordination, the facts remain that plaintiff is a private corporation, not a governmental entity, and the money which plaintiff seeks to recover from the debtor is not a forfeiture payable to the State of New York but compensation for the actual pecuniary loss sustained by plaintiff when it paid the forfeiture.  It is for

- 8 -

Congress to determine the factual circumstances under which a debtor will be entitled to a discharge and those facts which will disqualify a debtor from his discharge. The existence of a valid subrogation claim held by a bonding company against an individual debtor might be effective to establish the debt allowable in bankruptcy, but it would not be ground to indulge the fiction of deeming a bonding company to be a governmental entity for purposes of denying dischargeability under Section 523(a)(7). It is not for the courts to simply ignore what the statute says under the guise of an equitable doctrine which was not designed to undermine a statute of Congress. *See Kentucky Central Insurance Company v. Lueking (In re Lueking)*, 58 B.R. 472 (Bankr. E.D. Tenn. 1986).[7]

## Conclusion

Plaintiff is misguided in suggesting that it would be inequitable or contrary to public policy to permit the debtor's obligation to plaintiff to be discharged. The entitlement to a discharge and corresponding "fresh start" for the "honest but unfortunate" debtor lies at the very heart of the Bankruptcy Code. There is nothing in the record before me to suggest that this debtor was dishonest or did or failed to do anything which would justify denial of his discharge or the dischargeability of his debt to plaintiff. Corporations like plaintiff are engaged in the business of providing bail bonds and other suretyship obligations for profit, and they have the experience, professional counsel and capacity to protect themselves by the premiums they charge, the collateral they take to secure any potential liability and their ability to decline any particular bonding opportunity. No considerations of equity or public policy exist here that would justify the Court in ignoring the express provisions of a statute of Congress by treating this debtor's contractual liability for damages to a private corporation as if it were a forfeiture to a governmental entity.

---

[7] I have considered the brief transcript and the final Order (both unpublished) in *In re Contreras* (Bankr. S.D.N.Y. 2006) furnished by plaintiff's counsel. The one sentence oral ruling in that case does not recite any of the facts, or the arguments of the parties, or the authorities or analysis relied upon by the Court, and therefore is not useful as precedent in this Adversary Proceeding.

**<u>ORDER</u>**

Upon the foregoing, it is hereby

ORDERED that the complaint in this Adversary Proceeding is DISMISSED with prejudice and without costs.

Dated: White Plains, NY
      March 28, 2007

                                                          /s/ Adlai S. Hardin, Jr.
                                                              U.S.B.J.